**RONALD ADAMS CONTRACTOR, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5095.

United States Court of Appeals, Federal Circuit.

DECIDED: Feb. 24, 2003.

## DECISION

SCHALL, Circuit Judge.

On November 11, 1995, Ronald Adams Contractor, Inc. ("Adams") entered into a contract with the United States Army Corps of Engineers ("Corps") for the construction of flood control levies in the vicinity of Lake Pontchartrain, Louisiana. After the contract work was completed, Adams filed suit in the United States Court of Federal Claims under the Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq.* In its suit, Adams challenged the final decision of the contracting officer that denied (i) its claim for an equitable adjustment based upon an alleged differing site condition and (ii) its claim for an equitable adjustment based upon an alleged constructive change. On February 28, 2002, the Court of Federal Claims granted the government's motion for sum-

mary judgment with respect to both claims and dismissed the complaint. *Ronald Adams Contractor, Inc. v. United States,* No. 00–445C (Fed.Cl. Feb. 28, 2002). Adams now appeals the grant of summary judgment with respect to the constructive change claim. Because we conclude that there are genuine issues of material fact, we *vacate* the summary judgment in favor of the United States and *remand* the case to the trial court for further proceedings consistent with this opinion.

## ANALYSIS

### I.

The earthen levies that were to be constructed under the contract were to consist of material from a "borrow pit" 400 feet wide and 2300 feet long. Certain provisions of the contract addressed the way in which material was to be removed from the borrow pit. Section 0220–2, Paragraph 3.2.1 provided:

> To make optimum use of available material, excavation shall begin at one end of the borrow and be made continuous across the width of the area to the required depth.

*Ronald Adams Contractor,* No. 00–445C, slip op. at 11.

At the same time, Note 8 on the drawing titled "Typical Section of the Clay Borrow Pit" stated:

> Excavation within the borrow area shall begin at the most southern end of the pit and shall progress full width and depth towards the north end. The contractor shall begin excavation operations in areas adjacent to previously excavated pits.

*Id.*

On February 1, 1996, Adams submitted its excavation plan for the borrow pit, which was approved by the Corps on March 25, 1996. The plan stated in perti-

nent part as follows: "Excavation shall be within the borrow area limits shown on drawing 7 of the project plans and shall begin at the North end and progress full width toward the South end. Excavation shall be to a elevation of –15.0 feet...." Subsequently, during the first week of May 1996, the Corps directed Adams to cease its excavation work. The Corps informed Adams that, in removing fill material, it was not complying with its approved excavation plan or with the requirements of the contract. Eventually, Adams performed the excavation work in the manner directed by the Corps.

After the contract work was completed, Adams submitted a claim to the contracting officer for additional compensation under the contract. Adams argued that the Corps' order to cease excavation and to use a different method of excavating the borrow pit amounted to a constructive change that caused it to incur additional costs. After the contracting officer denied the claim, Adams appealed to the Court of Federal Claims.

### II.

A constructive change entitles a contractor to an equitable adjustment. *See* 48 C.F.R. § 52.243–4. A constructive change occurs when the government requires work beyond contract requirements. In order to decide whether a constructive change has occurred, the court must examine the pertinent contract language in order to see what the contract requirements were, so that the court can determine whether the government changed those requirements. *See Aydin Corp. v. Widnall,* 61 F.3d 1571, 1577 (Fed.Cir.1995).

In this case, Adams asserts that the Corps constructively changed the contract when it directed Adams to alter its method of excavating fill material from the borrow

pit. In addressing that claim, the Court of Federal Claims considered the contract language quoted above. The court concluded that the "[t]he contract's plain language" required that Adams excavate the borrow pit using the "single-cut" excavation method. *Ronald Adams,* No. 00–445C, slip op. at 12. Having thus construed the contract, the court determined that what it referred to as Adams' "twin-cut" method did not meet contract requirements. *Id.* Accordingly, the court held that the Corps did not constructively change the contract when it directed Adams to cease work and use the "single-cut" method of excavation. *Id.* at 13.

### III.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. C.R. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the grant of summary judgment for correctness, determining whether the matter was amenable to summary resolution and, if so, whether the law was correctly applied to undisputed facts. *Mass. Bay Transp. Auth. v. United States,* 129 F.3d 1226, 1230–31 (Fed.Cir.1997). Contract interpretation is a question of law that is subject to plenary review on appeal. *Id.* at 1231 (*citing Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1576 (Fed. Cir.1996)).

As just noted, the Court of Federal Claims construed the contract as requiring that Adams excavate the borrow pit using the "single-cut" method. The requirement that the borrow pit be excavated in a "single cut" is supported by the contract language, and we see no error in the court's construction. However, because the trial court's decision and the conten-

tions of the parties leave three questions unanswered we vacate and remand.

The first question is how exactly is the "single-cut" method performed? Adams was required to excavate down to a depth of twenty-five feet from the surface. The Court of Federal Claims construed the contract so that an operation under which Adams went completely across the borrow pit and removed ten feet of material and then made a second pass across the pit and removed fifteen feet of material would not meet the requirements of the contract. *Ronald Adams,* No. 00–445C, slip op. at 12. That would be a "two-pass" method. The parties agree that an operation in which Adams used a large shovel resting on the edge of the borrow pit and excavated down to a depth of 25 feet below the surface would be use of a "single-cut" method and would comply with the requirements of the contract. Such a method of operation is shown at page 9 of Adams' opening brief on appeal. On appeal, Adams contends that it intended to use, and did use, a third method of excavation before the Corps halted its work in May of 1996. It refers to that method as the "bench-cut" method. The "bench-cut" method purportedly is described at pages 15–17 of Adams' opposition to the government's motion for summary judgment and purportedly is depicted in Exhibit 19 to the opposition. It also purportedly is shown in the drawing at page 8 of Adams' opening brief on appeal. As far as we can tell, the Court of Federal Claims did not determine whether the "bench-cut" method of excavation complied with the requirements of the contract.

The second question that remains unanswered before us is precisely what method of excavation Adams was employing when the Corps ordered it to halt work. Suffice it to say that, based upon the material of record presented to us, it is unclear wheth-

er, when it was ordered to stop work, Adams was using the "two-pass" method, the "bench-cut" method, or some other method of excavation that may or may not have complied with the requirements of the contract. Indeed, at oral argument counsel did not appear to know precisely what method of excavation was being used when Adams was ordered to stop work.

The third question that remains unanswered is precisely what method of excavation the Corps directed Adams to use after it halted its work in May of 1996. The government's brief on appeal does not tell us what method of excavation the Corps directed Adams to use after it issued the stop order. The government simply states that the Corps directed Adams "to excavate the pit to the required depth." When the government moved for summary judgment in the Court of Federal Claims, however, it submitted proposed findings of uncontroverted facts. Proposed findings 11 and 12 are as follows:

> 11. On May 1, 1996, Ronald Adams requested to modify the excavation method in its approved excavation plan to utilize the twin cut method. App. 52—53. The rationale for the twin cut method put forth by Ronald Adams was to allow the clays in the lower portion of the borrow pit to dry out. App. 52.
> 12. The Corps refused to approve the modification to the excavation plan requested, but did allow the excavation plan to be modified to allow 500 feet of "twin cut" excavation at a time. App. 30—31.

The precise nature of the allowed method of excavation is not clear, however.

In sum, we agree with the Court of Federal Claims that Adams was required to use a "single-cut" method of excavation. We also agree with the Court of Federal Claims that the "twin-cut"—we have used the term "two-pass"—method of excava-

tion would not comply with the requirements of the contract. However, at this juncture, the case presents genuine issues of fact that are unresolved. These issues of fact are material because their resolution will answer the question of whether the Corps' actions stopping excavation and ordering Adams to employ a different method of excavation amounted to a constructive change, thereby entitling Adams to an equitable adjustment under the Changes clause of the contract.

For the foregoing reason, we vacate the grant of summary judgment in favor of the government. The case is remanded to the Court of Federal Claims so that it may address the following questions, as well as any further questions that may become relevant during further proceedings, in order to determine whether there was a constructive change under the contract:

(1) Exactly what method of excavation was Adams using when it was ordered to stop work in May of 1996, and what precisely was involved in that method of excavation?

(2) Did the method of excavation that Adams was using comply with the requirements of the contract?

(3) Exactly what method of excavation did the Corps direct Adams to use after it halted its work, and what precisely was involved in that method of excavation?

With the answers to these questions in hand, the court will be in a position to decide whether the Corps' actions towards Adams amounted to a constructive change. Accordingly, we vacate the summary judgment in favor of the United States and remand the case for further proceedings consistent with this opinion.

No costs.